UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RECEIVED

NOV 0 8 2019

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INFORMATION** |
| | ) | |
| Plaintiff, | ) | |
| | ) | 18 U.S.C. § 1001 |
| | ) | 18 U.S.C. § 1349 |
| v. | ) | |
| | ) | |
| CLARISSA LYNN COMBS, | ) | |
| | ) | |
| Defendant. | ) | |

THE UNITED STATES ATTORNEY CHARGES:

## **INTRODUCTION**

At times relevant to the Information:

1.     Victim Organization 1 was a non-profit organization in the greater Minneapolis-St. Paul, Minnesota area.   Victim Organization 1 belonged to network of non-profit organizations that had locations throughout the United States.

2.     Victim Organization 1's mission was to alleviate poverty, including by providing housing and related services to the homeless.   Victim Organization 1 relied on funding from private donors, charitable foundations, and the United States Department of Housing and Urban Development, among others, to provide these services.

3.     As part of its work to help the homeless, Victim Organization 1 made direct payments to landlords and other vendors (collectively "vendors"), who provided housing and related services to the organization's clients.



*United States v. Clarissa Lynn Combs*

4.     Victim Organization 1 required vendors to provide supporting documentation with a request for program funds.   For example, landlords were required to provide a signed lease agreement and Internal Revenue Service (IRS) Form W-9 Request for Taxpayer Identification Number (TIN) and Certification (IRS Form W-9).   To complete the IRS Form W-9, a vendor was required to certify under penalties of perjury that, among other things, the TIN was correct and belonged to the vendor.   For an individual serving as a vendor, the TIN was usually the individual's Social Security Number (SSN).

5.     Prior to disbursing program funds to a vendor, Victim Organization 1 also required its employees to submit a written check request along with the vendor's supporting documentation.   Approval from a program manager or other supervisor from Victim Organization 1 was required before submitting the request to Victim Organization 1's accounts payable department for approval.   If approved, accounts payable then transmitted a request to a bank via email to disburse a check directed to the vendor.

6.     Defendant **CLARISSA LYNN COMBS** was a Victim Organization 1 program manager for a program that provided housing assistance to the homeless.   In that role, **COMBS** supervised other Victim Organization 1 employees and approved check requests for charitable funds, among other things.

7.     Defendant **COMBS** resided in the District of Minnesota.

2

*United States v. Clarissa Lynn Combs*

## COUNT 1
(Conspiracy to Commit Wire Fraud)

8.     The allegations contained in paragraphs 1 through 7 of this Information are realleged and incorporated here.

9.     Beginning no later than in and around April 2012, and continuing until in and around February 2019, in the State and District of Minnesota, the defendant,

**CLARISSA LYNN COMBS,**

with others known and unknown to the United States Attorney, did knowingly conspire and agree to commit an offense against the United States, namely:

> To knowingly devise and participate in a scheme and artifice to defraud Victim Organization 1, to obtain and retain at least $684,081.90, in charitable funds from Victim Organization 1, and to conceal the scheme by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1343, as further described below.

*Manner and Means of the Conspiracy*

10.     Defendant **COMBS** devised a scheme to defraud Victim Organization 1 of charitable funds intended to help the homeless by recruiting other Victim Organization 1 employees, as well as her friends, family members, and associates to pose as vendors providing services to fictitious homeless clients (collectively "vendor coconspirators").

11.     In many instances, **COMBS** recruited vendor coconspirators whom she knew to be in financial need.   For example, in and around 2012, **COMBS** recruited vendor

3

*United States v. Clarissa Lynn Combs*

coconspirator S.O.R., who had previously relied upon Victim Organization 1's assistance when she was homeless.

12.    To induce Victim Organization 1 into giving her vendor coconspirators money and to conceal that the homeless clients whom they claimed to serve were fictitious, **COMBS** directed vendor coconspirators to provide their names, SSNs, and other identifying information to allow her to complete fraudulent IRS Forms W-9, lease agreements, and check requests that falsely claimed that the vendor coconspirators provided housing to homeless clients.   **COMBS** also directed vendor coconspirators to complete such documents themselves, and to provide their identifying information to other coconspirators who were Victim Organization 1 employees (collectively "employee coconspirators").   In fact, as defendant **COMBS** knew, the vendor coconspirators provided no housing or other service to Victim Organization 1's clients, and were not entitled to Victim Organization 1's funds.

13.    In furtherance of and to conceal the conspiracy, **COMBS** used alias "Monica" for a vendor coconspirator, J.L.C., whose real name is known to the United States Attorney.   To further conceal her association with J.L.C., **COMBS** diverted funds intended for J.L.C. to J.L.C.'s property management company, the name of which is known to the United States Attorney.

14.    It was further a part of the conspiracy that **COMBS** submitted the fraudulent check requests and supporting documentation to Victim Organization 1's accounts payable

4

*United States v. Clarissa Lynn Combs*

department through multiple means, including via email.   To conceal her fraud, **COMBS** submitted check requests in the names of other Victim Organization 1 employees who were unaware of the fraud.

15.     In furtherance of the conspiracy, **COMBS** also directed employee coconspirators to submit fraudulent check requests and supporting documentation to accounts payable.

16.     It was also part of the conspiracy that **COMBS** sought to facilitate the issuance of the checks, minimize scrutiny on fraudulent check requests by accounts payable employees, and to pressure accounts payable employees to disburse funds by sending emails to accounts payable employees about the check requests.   For example, in multiple emails, including examples set forth in the table below, **COMBS** insisted that checks should be delivered to her directly and were urgently needed, suggesting that fictitious clients might face imminent negative consequences—including eviction—if accounts payable did not disburse funds quickly:

| Date<br>(on or about) | Communication |
|---|---|
| November 27, 2012 | An accounts payable employee asked **COMBS** if instead of making checks available to **COMBS** for delivery, "perhaps you could ask [vendor coconspirator A.L.D.] to allow us to mail the checks to her in the future . . . [o]r is she just an extremely impatient person and would not wait?"<br><br>**COMBS's** responded approximately three minutes later, stating, "I will chat with her tomorrow. let her know we know [sic] need |

*United States v. Clarissa Lynn Combs*

|  | to mail the checks. This maybe [sic] more on me. I do not want evictions on these clients there [sic] behind in rent." |
|---|---|
|  | This led the accounts payable employee to respond: |
|  | I will definitely have the checks ready for you tomorrow by 1:00, but I'm hoping that if she could let us mail the checks directly to her in the future, then you wouldn't have to hassle with delivering them to her each time. I certainly understand not wanting any of the clients getting eviction notices. |
| November 24, 2014 | COMBS emailed an accounts payable department employee, stating: |
|  | Hey, Wondering if you got the check form [sic] [Victim Organization 1 employee]. Out of all those request [sic] there are **2 that I'm super worried about**. Landlord [sic] are stating Evctions [sic] are going to be filed. If check not in there [sic] office this week. 1. [Name] to pick today at 3:00pm 2. [Vendor coconspirator R.E.E.] I had Requested to pick up ay [sic] [Victim Organization 1] today at 3:30pm is that going to work? |

17.    Many of **COMBS's** emails contained a signature highlighting Victim Organization 1's mission, stating that its "Homeless Youth shelter provides approximately one third of the beds available to youth experiencing homelessness in Minnesota.  Visit [website] to learn more about our impact on preventing and ending youth homelessness."

*United States v. Clarissa Lynn Combs*

18.     Among the writings, signs, signals, pictures, and sounds that defendant

**COMBS** caused to be transmitted between at least in and around April 2012 and in and

around June 2017 by means of wire communication in interstate and foreign commerce for

the purpose of executing the scheme and artifice to defraud Victim Organization 1 were

approximately 442 requests from Victim Organization 1 to its bank for checks, as well as

the following email communications:

| Date (on or about) | Communication |
|---|---|
| December 9, 2013 | **COMBS** sent an email to an accounts payable employee with a W-9 containing vendor coconspirator A.L.D.'s name and SSN.  **COMBS's** message stated, "Hey here is her updated W-9. I did put some check request in for her today." |
| January 28, 2014 | **COMBS** emailed vendor coconspirator R.E.E. a copy of a blank Form W-9 with the message, "Hey call me when you get this. I want to get check this week." |
| June 9, 2014 | **COMBS** emailed an accounts payable employee to correct the address of vendor coconspirator A.S.H., falsely claiming that "**her Assit [sic] Put wrong address**" and stating that **COMBS** would provide a new Form W-9 for A.S.H.  **COMBS** then well knew that A.S.H. was not a landlord, did not run a business, and did not have an assistant. |
| June 11, 2014 | **COMBS** emailed an accounts payable employee seeking to stop the check issued to vendor coconspirator A.S.H. discussed on June 9, 2014, and falsely claiming that A.S.H. "had to Fire her Assit [sic], She was stealing." |
| July 21, 2014 | **COMBS** forwarded an email from vendor coconspirator A.S.H. to an accounts payable employee representing that A.S.H. was in the process of establishing a business name.  **COMBS** also described A.S.H. as a "LandLord" when she forwarded the email, although **COMBS** then well knew that A.S.H. was not a landlord, did not run a business, and did not have an assistant. |
| December 8, 2014 | **COMBS** forwarded an email from vendor coconspirator T.L.B to an accounts payable employee, wherein T.L.B. stated a check intended for T.L.B. had been returned by the post office.  **COMBS** stated, "Hello |

*United States v. Clarissa Lynn Combs*

| | |
|---|---|
| | [Victim Organization 1 employee], Can you let me know when this check comes back.   [T.L.B.].   I'm glad this was not on our end." |
| February 11, 2015 | **COMBS** sent a check request to an accounts payable employee stating that a landlord, R.E.E., whom **COMBS** knew to be a vendor coconspirator, was "upset" because she had not yet received funds because of a problem with tax information previously submitted. **COMBS** also stated that she would submit a signed statement from R.E.E. stating that she received a tax form 1099. |
| May 6, 2015 | Vendor coconspirator J.L.C. emailed **COMBS** copies of leases for two fictitious homeless clients.   **COMBS** responded, "Good I already got 3000 coming. it just went in today." |
| February 8, 2017 | **COMBS** emailed accounts payable employees an attachment with a letter containing vendor coconspirator S.L.M.'s name and address in response to a request for confirmation regarding her address as a landlord. |

19.     In reliance on the fraudulent check requests and supporting documentation, as well as **COMBS's** false representations via email and otherwise, accounts payable emailed Victim Organization 1's bank to request disbursement of charitable funds in checks directed to **COMBS's** coconspirators.

20.     In furtherance of the scheme, **COMBS** provided checks to vendor coconspirators in person and via employee coconspirators.   **COMBS** also directed accounts payable to send checks to vendor coconspirators through the U.S. mail.   To conceal the true destinations of the checks from Victim Organization 1, **COMBS** instructed vendor coconspirators who received checks via mail to obtain U.S. Post Office boxes and a general delivery address.

21.     In furtherance of the scheme, **COMBS** instructed her vendor coconspirators to cash the checks and divide the proceeds with her, and in some cases, another employee

*United States v. Clarissa Lynn Combs*

coconspirator.  **COMBS** also directed vendor coconspirators to cash the checks at the same bank that issued the checks, believing that this would result in less scrutiny on the transactions.  **COMBS** determined how much money her coconspirators were permitted to retain from each check.

22.    The disbursement of Victim Organization 1 funds in checks to vendor coconspirators resulted in the assessment of thousands of dollars of federal income tax liability on **COMBS's** vendor coconspirators.  Although **COMBS** obtained a portion of her coconspirators' funds, she neither shared in their tax liability nor paid any taxes herself on proceeds from the scheme.

23.    On or about March 20, 2017, a Victim Organization 1 employee found a suspicious check request approved by **COMBS**, which prompted Victim Organization 1 to begin an internal investigation into **COMBS's** fraud.   On or about March 29, 2017, Victim Organization 1 terminated **COMBS's** employment due to misconduct.

### *COMBS's Efforts to Conceal the Conspiracy*

24.    Even after Victim Organization 1 terminated **COMBS's** employment, **COMBS** sought to conceal and directed coconspirators to conceal the full scope of the conspiracy through multiple means.  For example, on or about April 2, 2017, **COMBS** instituted administrative proceedings before the Minnesota Department of Employment and Economic Development to claim unemployment benefits, insisting that she was not dismissed due to misconduct, when in fact she knew that she was fired due to her fraud.

9

*United States v. Clarissa Lynn Combs*

Indeed, on or about June 16, 2017—after a hearing regarding her unemployment benefits on the same date—**COMBS** told coconspirators B.Y.M. and L.H. that she instituted the proceedings solely to obtain information about how much Victim Organization 1 knew about her fraud.  **COMBS** told B.Y.M. and L.H., among other things, "I wasn't even gonna do the damn thing, the little damn hearing, but I said, 'Man, I need to do this, just so I can see a little bit more about what they're talking about,'" and "I don't give a fuck about the unemployment, I need to know what they're looking at."

25.    In an effort to conceal her involvement in the conspiracy, **COMBS** also took steps to dissuade vendor coconspirators from contacting and cooperating with law enforcement.   During the same conversation with coconspirators B.Y.M. and L.H. on or about June 16, 2017, **COMBS** said, "[Victim Organization 1] definitely stated they contacted law enforcement."   **COMBS** then instructed B.Y.M. and L.H. that if they were contacted about the case, "I think we should get together and chat about it," and "We definitely all need to get on the same page for it."   **COMBS** also told L.H. that she should "say as little as possible," and instructed her to tell law enforcement that L.H. worked for someone who provided legitimate services to Victim Organization 1.   **COMBS** also stated that she would direct an unidentified coconspirator to pretend to be L.H.'s employer who provided housing services to Victim Organization 1 clients.

26.    **COMBS** further sought to conceal the scope of the conspiracy by lying to her coconspirators about other conspirators involved.   For example, on or about June 16,

*United States v. Clarissa Lynn Combs*

2017, **COMBS** lied to B.Y.M. and L.H. about other vendor coconspirators' involvement

in the scheme, falsely stating that anyone other than B.Y.M., L.H., and A.O., an unindicted

coconspirator, had cashed checks in furtherance of the scheme.   In fact, as **COMBS** then

well knew, she had directed multiple other coconspirators to cash checks and share the

proceeds with her in furtherance of the scheme for multiple years.

     27.    **COMBS** also sought to conceal the conspiracy by knowingly attempting to

corruptly persuade and intimidate, and engaging in misleading conduct toward vendor

coconspirator A.L.D., with the intent to influence and prevent the testimony of A.L.D. in a

federal grand jury investigation, through the means set forth in the table below:

| Date<br>(in and around/on or about) | Communication |
|---|---|
| September 2018 | **COMBS** falsely told A.L.D. that she had spoken to the "detectives" investigating the fraud at Victim Organization 1, that A.L.D.'s name was not mentioned, and that A.L.D. was not a target of the investigation. |
| February 5, 2019 | **COMBS** sent text messages to A.L.D. that stated, among other things:<br><ul><li>"WHAT THE FUCK! !!!! REALLY"</li><li>"I guess I'm dying you riding without me. Fuck!!!"</li><li>When A.L.D. asked what **COMBS** was talking about, **COMBS** stated, "Someone told me to read from 3wks ago. I did," and referenced a Star Tribune newspaper article published on or about January 15, 2019, about A.L.D.'s and four other vendor coconspirators' guilty pleas to conspiracy to defraud Victim Organization 1 with **COMBS**.</li><li>**COMBS** then stated that she had tried "comings [sic] by [A.L.D.'s] house Friday no answer," and "I had not heard from you since wedding.  Things just got super</li></ul> |

*United States v. Clarissa Lynn Combs*

| | real." | |
|---|---|---|

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### (False Statements)

28.     The allegations in paragraphs 1-7 and 9-27 of this Information are realleged

and incorporated here.

29.     On or about September 10, 2019, the defendant,

### CLARISSA LYNN COMBS,

did willfully and knowingly make materially false, fictitious, and fraudulent statements and

representations in a matter within the jurisdiction of the executive branch of the

government of the United States, namely during a proffer to Special Agents of the Office

of the Inspector General of the Department of Housing and Urban Development and the

Federal Bureau of Investigation, and a United States Postal Inspector, at the United States

Attorney's Office in Minneapolis, in the District of Minnesota.

30.     Among the false statements **COMBS** made were that she paid three people

to prepare false documents in furtherance of the scheme described in Count 1 of this

Information, when in fact, as she then well knew, she completed the documents in question,

as was evident from the handwriting on the documents.

31.     **COMBS** also falsely claimed that she had a years-long addiction to cocaine

and provided false information about conducting specific drug transactions, when in fact,

*United States v. Clarissa Lynn Combs*

as she later admitted, she had no such addiction, and lied "[a]s a way to help myself," because, "[a] lot of people use addiction to get out of stuff."

All in violation of Title 18, United States Code, Section 1001.

## FORFEITURE ALLEGATIONS

Counts 1 and 2 of this Information are incorporated here for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

Upon conviction of either of the offenses alleged in Count 1 and Count 2 of this Information, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

If any property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

13

*United States v. Clarissa Lynn Combs*

All in violation of Title 18, United States Code, Sections 1349, 1512(b)(1), 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

Dated: 11/8/2019

ERICA H. MacDONALD
United States Attorney

BY: MIRANDA E. DUGI
Attorney ID No. 5140546 (NY)
Assistant United States Attorney

14